UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| KELBY HELMICK,<br><br>Plaintiff,<br><br>v.<br><br>DAVE & BUSTER'S, INC.; DAVE & BUSTER'S OF CALIFORNIA, INC.; DAVE & BUSTER'S MANAGEMENT CORPORATION, INC., DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: SACV 18-00142-CJC(GJSx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

## I. INTRODUCTION

Plaintiff Kelby Helmick filed this action against Defendants Dave & Buster's, Inc. ("DBI"), Dave & Buster's of California, Inc. ("DBOC"), Dave & Buster's Management Corporation, Inc. ("DBMC"), and Does 1 through 10, inclusive, in Orange County

-1-

Superior Court on December 22, 2017. (Dkt. 1-1 [Complaint, hereinafter "Compl."].) Plaintiff asserts seven causes of action against Defendants: (1) failure to reasonably accommodate disability, Cal. Gov. Code § 12940(m); (2) failure to engage in good faith interactive process, Cal. Gov. Code §12940(n); (3) disability discrimination, Cal. Gov. Code § 12940(a); (4) failure to prevent discrimination/retaliation, Cal. Gov. Code § 12940(k); (5) retaliation in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(h); (6) wrongful termination; and (7) retaliation for taking leave in violation of the California Family Rights Act, Cal. Gov. Code § 12945.2(I). (*Id*.) Defendants removed the action to this Court on January 25, 2018, on the basis of diversity jurisdiction and fraudulent joinder. (Dkt. 1 [Notice of Removal].) Before the Court is Plaintiff's motion to remand for improper removal. (Dkt. 11 [hereinafter "Mot."].) For the following reasons, the motion is DENIED.[1]

## II. BACKGROUND

According to the Complaint, Plaintiff Kelby Helmick is a resident of Orange County, California. (Compl. ¶ 3.) Plaintiff began his employment with "Dave & Buster's" on or about May 18, 2012, at the Dave & Buster's Irvine location ("D&B Irvine"). (*Id*. ¶ 11; Mot. at 2.) Plaintiff's job duties included taking orders, serving food and beverages, and training new employees. (Compl. ¶ 11.) The Complaint collectively refers to all named Defendants as "D&B," or "Dave & Buster's," and all alleged actions refer to "D&B" as the actor. (*Id*. ¶ 7.) DBI is a Missouri corporation, (*id*. ¶ 4), DBOC is a California corporation, (*id*. ¶ 5), and DBMC is a Delaware corporation, (*id*. ¶ 6). All three named Defendants are authorized to do business, and do business in, Orange County, California. (*Id*. ¶¶ 4–6.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 26, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff injured his right knee on or about March 5, 2016. (*Id.* ¶ 12.) He sought treatment, and called D&B to inform a manager that he would need a few days off work. (*Id.*) About a week later, Plaintiff's orthopedic surgeon diagnosed Plaintiff with an ACL tear and recommended that he undergo three to four weeks of physical therapy followed by reconstructive surgery. (*Id.* ¶ 13.) Plaintiff called D&B to inform a manager of his ACL tear and his need for time off work. (*Id.*) Soon after, D&B allegedly attempted to send Plaintiff documents regarding his rights under the Family Medical Leave Act ("FMLA") and to confirm the dates of his medical leave, but the documents were sent to an invalid address. (*Id.* ¶ 14.) The FMLA documents were returned to D&B marked "UNABLE TO FORWARD" and D&B made no further effort to learn Plaintiff's correct address or contact him about the documents. (*Id.*) On or about Mach 25, 2016, Plaintiff visited D&B and turned in a doctor's note that stated he could not return to work until cleared by his surgeon after surgery. (*Id.* ¶ 15.)

Plaintiff completed his physical therapy and notified D&B that his surgery was scheduled for April 27, 2016, both after his doctor's appointment on April 11, 2016, and after his pre-operation appointment on April 16, 2016. (*Id.* ¶¶ 16–17.) Plaintiff had his surgery as scheduled, and on or about May 4, 2016, returned for his follow up appointment. (*Id.* ¶¶ 17–18.) Plaintiff received a doctor's note indicating that he would need about five months off work to recover, and then hand-delivered this note to a D&B manager a few days later. (*Id.* ¶ 18.) On or about May 26, 2016, Plaintiff's doctor indicated that he was recovering well, and the next day Plaintiff called D&B and informed a manager he would likely need less than five months off work to recover. (*Id.* ¶ 19.) On or about June 16, 2016, D&B allegedly sent Plaintiff a letter requesting a response by June 23, 2016, to discuss Plaintiff's return to work. (*Id.* ¶ 20.) Plaintiff never received the letter, as it was sent to an invalid address, and D&B made no effort to learn Plaintiff's correct address. (*Id.*) On or about July 15, 2016, D&B allegedly sent Plaintiff another letter stating that Plaintiff had not returned to work or called to update

D&B on his status. (*Id.* ¶ 21.) Once again, the letter was sent to an invalid address and Plaintiff did not receive it. (*Id.*)

On July 19, 2016, Plaintiff's doctor provided him with a release to return to work. (*Id.* ¶ 22.) On or about July 21, 2016, April Fletcher, DBI's Human Resources representative, left Plaintiff a voicemail, indicating that D&B had sent Plaintiff a letter and his final pay, that the letter was returned to her, and that she nor D&B Irvine had been able to reach Plaintiff. (*Id.* ¶ 23; Mot. at 4.) She requested an updated address and asked Plaintiff to call her back. (Compl. ¶ 23.) Plaintiff then went to D&B and tried to submit his doctor's release, but D&B confirmed Plaintiff's termination and refused to accept the release. (*Id.* ¶ 24.) D&B told Plaintiff he needed to speak with Ms. Fletcher, (*id.*), so he called her and explained that he was unaware that D&B was trying to reach him except for her recent voicemail, (*id.* ¶ 25). He explained that he had turned in his previous doctor's notes to D&B managers, kept them updated, and was now released to work. (*Id.*) Ms. Fletcher, "apparently knowing since April 1, 2016, that [Plaintiff] had not received the March 21, 2016 and June 23, 2015 letters she had sent, told him his only option was to reapply for his job." (*Id.*)

Plaintiff called D&B to find out why his doctor's notes had not been given to Ms. Fletcher, but he was told by a manger that it was "out of [their] hands," and that he would need to reapply. (*Id.* ¶ 26.) Plaintiff reapplied for his position at D&B on July 29, 2016, but did not hear back about his application. (*Id.* ¶¶ 27–28.) On or about August 1, 2016, Plaintiff called D&B to ask about his job application, and was told by Suzanne Greb that she would "look into it," but never heard back from anyone regarding his application. (*Id.* ¶ 28.)

Plaintiff filed this action in Orange County Superior Court on December 22, 2017. (*Id.*) Although Plaintiff and DBOC are both California residents, Defendants removed

the action on the grounds that DBOC was a sham defendant named specifically for the purpose of evading federal jurisdiction. (*Id.*; *see generally* Dkt. 17 [Defendants' Opposition, hereinafter "Opp."].) Plaintiff then filed the present motion to remand the case, contesting Defendants' characterization of DBOC as a sham defendant. (Mot.)

Defendants, through the declaration of DBMC's corporate paralegal, state that DBOC's function is to act as the Dave & Buster's designated entity for operations, licensing, leasing property, and the payment of taxes in California. (Dkt. 17-1 [Declaration of Jill Valachovic, hereinafter "Valachovic Decl."] ¶ 5.) DBOC holds the liquor licenses for Dave & Buster's locations in California, including D&B Irvine. (*Id.*) At all times during Plaintiff's employment, DBOC did not have any employees, (*id.* ¶ 4), and delegated management of D&B Irvine to DBMC, (*id.* ¶ 6). DBMC is the employer of all employees working at D&B locations nationwide. (*Id.* ¶ 3.) DBMC retains the right to control employee conduct at D&B Irvine, and ensures that all employees comply with DBOC's obligations under all applicable laws, such as liquor licensing. (*Id.* ¶ 6.) At all times during Plaintiff's employment, DBMC assumed responsibility for all payroll functions, human resources administration, and oversight of the day-to-day functions at D&B Irvine. (*Id.*) Defendants have provided Plaintiff's paystubs from 2016 and redacted W-2's from 2012 until 2016, all of which were issued by DBMC. (*Id.* ¶¶ 7–8, Exs. A, B.)

Plaintiff provides evidence that DBOC's liquor license for D&B Irvine shows that "business name" of DBOC is "Dave & Buster's." (Dkt. 12 [Plaintiff's Request for Judicial Notice, hereinafter "RJN"] Exs. F, G.)[2] Dave & Buster's Entertainment, Inc., the

---

[2] Plaintiff's request for judicial notice, (RJN), is GRANTED as to Exhibits F, G, I, J, K, and L. Rule 201(b) of the Federal Rules of Evidence authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Ninth Circuit has taken judicial notice of documents such as "records and reports of administrating bodies," *Interstate Natural Gas Co. v. So. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953), and these exhibits are part of the public record of

parent company of DBOC, stated in its Form 10-K filings with the SEC in 2016 and 2017 that "Alcoholic beverage control regulations relate to numerous aspects of the daily operations of each store, including minimum age of patrons and employees, hours of operation, advertising, wholesale purchasing, inventory control and handling and storage and dispensing of alcoholic beverages." (*Id*. Ex. J at 3.)[3] DBOC appeared in proceedings before the California Department of Alcoholic Beverage control regarding "its bartender" in 2015. (*Id*. Ex. K.) DBMC and DBOC also have the same officers and addresses on file with the California Secretary of State. (*Id*. Ex. I.) Many of the documents in Plaintiff's personnel file only refer to "Dave and Buster's" and do not mention any specific Defendant entity, nor is there any reference to DBMC. (*See* Dkt. 13 Ex. B.)

## III. LEGAL STANDARD

Federal district courts have diversity jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a). In assessing whether there is proper subject matter jurisdiction, courts disregard the citizenship of a defendant that has been fraudulently joined. *Morris v. Princess Cruises*, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder is fraudulent if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the

---

the California Department of Alcoholic Beverage Control, California Secretary of State, and the Securities and Exchange Commission.

[3] Plaintiff states that his personnel file indicates that DBI was his employer with DBMC, which he argues contradicts a declaration provided with Defendants' Notice of Removal that stated DBMC was Plaintiff's exclusive employer. (Mot. at 4–5; Dkt. 4 ¶ 5.) However, that same declaration clarifies that DBI is DBMC's parent company, (Dkt. 4 ¶ 2), meaning that DBMC could be Plaintiff's exclusive employer, and its parent company's information could appear on some of its documents.

resident defendant was fraudulent, and remand is necessary." *Id.* at 1044. Fraudulent joinder must be proven by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and a defendant may present additional facts to show that the joinder is fraudulent, *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). *See Morris*, 236 F.3d at 1068 (approving of "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony when fraudulent joinder is alleged).

However, in determining whether a defendant was fraudulently joined, all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of remand to state court. *Hunter*, 582 F.3d at 104 at 1042. "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051 (C.D. Cal. 2013) (quoting *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)). "The defendant must demonstrate that plaintiff has no possibility of establishing a cause of action in state court against the sham defendant." *Racier v. Sun Life Assurance Co. of Can.*, 941 F. Supp. 2d 1191, 1194 (N.D. Cal. 2013). Accordingly, if a "non-fanciful possibility" that Plaintiff can state a viable state law claim exists, the Court must remand this action. *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002); *see, e.g., Doe v. Medalist Holdings, L.L.C.*, No. EDCV171264MWFFFMX, 2017 WL 3836041, at *2 (C.D. Cal. Sept. 1, 2017).

## IV. DISCUSSION

Defendants assert that DBOC was added as a sham defendant in this case to avoid federal jurisdiction, and was not Plaintiff's employer. Defendant argues that all of the evidence in the record makes it clear, under the *Vernon* factors, that DBMC was

Plaintiff's employer, and Plaintiff has made no plausible argument that DBOC was also Plaintiff's employer. Plaintiff argues that DBOC has a right to control the employees and operations at D&B Irvine because it holds the liquor license for the premises, and therefore was Plaintiff's employer or joint-employer.

Five of Plaintiff's claims are brought under FEHA, which "prohibits only 'an employer' from engaging in improper discrimination" and "the aggrieved plaintiff must be an employee." *Vernon v. State*, 116 Cal. App. 4th 114, 123–24 (2004) (citing Cal. Gov. Code § 12940(a).) To determine the existence of an employer/employee relationship, the Court must consider the "'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant *controls* the plaintiff's performance of employment duties." *Id*. at 124 (emphasis added). "[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." *Id*. at 125 (quoting *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997)).

> Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.

*Id*. "Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is the most important." *Id*. at 126 (citations omitted); *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014) (Courts in FEHA cases

have emphasized "the control exercised by the employer over the employee's performance of employment duties," and this standard requires "a comprehensive and immediate level of 'day-to-day' authority" over matters such as hiring, firing, direction, supervision, and discipline of the employee.).[4]

Plaintiff argues that by virtue of DBOC holding the liquor license for D&B Irvine, it retained substantial control over Plaintiff's employment and "could not comply with its obligations under law without controlling Plaintiff's employment in substantial regard." (Mot. at 9–11.) However, "the rule is that, '[t]he licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct *in the exercise of his license . . . .*'" *Garcia v. Martin,* 192 Cal.App.2d 786, 790 (1961) (emphasis added) (quoting *Mantzoros v. State Bd. of Equalization,* 87 Cal.App.2d 140, 144 (1948)). "[T]he rule making a liquor licensee vicariously liable for the acts of employees *applies to the misuse of the liquor license, not to the violation of law in general.*" *Joe Hand Promotions, Inc. v. McInnis*, No. 10-CV-01614-LHK, 2011 WL 1740109, at *9 (N.D. Cal. May 5, 2011) (holding that "[e]ven though there exists some tangential relationship between an establishment's liquor license and broadcasts shown in that establishment, the unlawful showing of a broadcast is not an exercise of a liquor license" and thus "a liquor licensee should [not] be per se liable for the unlawful showing of a broadcast at the establishment listed on the liquor license") (emphasis added). The fact that DBOC had a right to control the manner in which alcohol was served, and related issues, is not a broad right to control that includes personnel decisions regarding Plaintiff's medical leave and termination. The decisions at issue in this case are unrelated to D&B Irvine's compliance with California liquor laws, thus the fact that DBOC holds

---

[4] Plaintiff's emphasis on the employer's "right to control the manner and means" of the employee's services is misplaced, as this standard is applied in cases regarding the determination of whether a party is an employee or independent contractor. (Mot. at 7 [citing *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014)].)

D&B Irvine's liquor license does not give rise to a plausible claim that DBOC discriminated against Plaintiff in the personnel decisions alleged.

Plaintiff has also made no allegations nor provided any evidence that DBOC in fact exercised any control over either D&B Irvine or, most importantly, personnel decisions about Plaintiff. Plaintiff does not refute Defendants' evidence that DBMC retains the right to control employee conduct at D&B Irvine, and ensures that all employees comply with DBOC's obligations under all applicable laws, such as liquor licensing.[5] Additionally, "[t]he absence of any direct or indirect remuneration from [DBOC] to [Plaintiff], while not controlling, is at least strong evidence that an employment relationship did not exist." *Vernon*, 116 Cal. App. 4th at 126. "[T]he control an organization asserts must be *significant*, and there must be a sufficient indicia of an interrelationship to justify the belief on the part of an aggrieved employee that the alleged co-employer is *jointly responsible for the acts* of the immediate employer." *Id.* (internal quotations and citations omitted) (emphasis added). While Plaintiff's allegations establish that DBOC, DBMC, and DBI are affiliated corporate entities, these allegations are insufficient to plausibly conclude that DBOC is jointly responsible for the alleged acts of DBMC and DBI regarding Plaintiff's medical leave and termination.[6] *Compare*

---

[5] Indeed, pursuant to the Department of Alcoholic Beverage Control regulations, "[a] person to whom a licensee has delegated discretionary powers to organize, direct, carry on or control the operations of a licensed business shall be deemed the manager thereof for purposes of applying Section 23788.5 of the Alcoholic Beverage Control Act." 4 Cal. Code Regs. § 57.5. Plaintiff argues that DBOC was required to provide a formal application and complete a qualification process to permit DBMC to manage D&B Irvine, but that his public records act request for such documents revealed that such documents do not exist. (Dkt. 18 at 8.) However, whether DBMC was qualified as manager for purposes of California liquor law is unrelated to whether it had a right to control personnel decisions regarding Plaintiff's medical leave.

[6] Plaintiff also argues that DBOC's has made representations that it is Plaintiff's employer by being the entity doing business as "Dave & Buster's" in Irvine, and by "appear[ing] to accept that it employs those who serve alcohol in carrying out its business, and that it is responsible for controlling such individuals" based on proceedings in July 2015 before the California Alcoholic Beverage Control Appeals Board. (*Id.* at 9, 12.) However, Plaintiff's inferences drawn from these two "representations" do not establish that DBOC had any connection to alleged decisions regarding Plaintiff's medical leave or termination, and merely support the conclusion that DBOC is an affiliated entity to DBI and DBMC.

*Jankins v. Wells Fargo Bank, N.A.*, No. CV1700887BROAJW, 2017 WL 1181562, at *5 (C.D. Cal. Mar. 29, 2017) (holding that the plaintiff had plausibly stated a claim against the defendant as his employer because the plaintiff was subject to the policies and rules of the defendant in his day-to-day operations, and his performance was evaluated based on those policies) *with Vasquez v. Wells Fargo Bank, Nat'l Ass'n*, 77 F. Supp. 3d 911, 923 (N.D. Cal. 2015) (holding that plaintiff had not plausibly alleged the defendant was his employer where the plaintiff did not dispute that the defendant was "simply a holding company that owns shares" in the plaintiff's corporate employer, and merely alleged the two entities were "engaged in a joint enterprise").

The dearth of allegations about DBOC's relationship to the personnel decisions at issue in this case stands in stark contrast to the specific and concrete evidence of DBI and DBMC's roles in these decisions. DBI made all the relevant communications, both successful and attempted, with Plaintiff regarding his taking of medical leave and his termination. DBMC is Plaintiff's presumptive employer, as it issued Plaintiff's paystubs and W-2 forms. Under FEHA, "there is a rebuttable presumption that 'employer,' as defined by subdivision (d) of Section 12926, includes any person or entity identified as the employer on the employee's Federal Form W-2 (Wage and Tax Statement)." Cal. Gov. Code § 12928; *DelGiacco v. Cox Commc'ns, Inc.*, No. SACV 14-0200 DOC, 2015 WL 1535260, at *8 (C.D. Cal. Apr. 6, 2015). Beyond mere speculation, Plaintiff has not refuted Defendants' evidence that DBMC oversaw the day-to-day functions of employees at D&B Irvine, like Plaintiff, and DBMC employees were the "sole-decision-makers with respect to scheduling, hiring, firing, and disciplinary actions" at D&B Irvine.

Simply put, Defendants have met their heavy burden of demonstrating that Plaintiff fraudulently joined DBOC as a defendant and that their removal of this action was proper. Plaintiff has not raised any fact to plausibly support a cause of action against DBOC. Defendants have provided clear and convincing evidence that DBOC was not

Plaintiff's employer and was not in control of personnel decisions about Plaintiff's medical leave and termination. Therefore, Plaintiff cannot possibly assert his claims against DBOC at this time.

In his reply, Plaintiff accuses the Defendants of making false representations in their Notice of Removal and Opposition brief regarding various facts about DBI, DBMC, and DBOC. (*See generally* Dkt. 18.) While these allegations are troubling, only one relates to DBOC's possible connection or involvement with the personnel decisions at issue. Defendants have submitted, by declaration, that DBOC did not have any employees during Plaintiff's employment, and does not have any employees now. (Valachovic Decl. ¶ 4.) Plaintiff asserts this is false, and has submitted evidence of a declaration from an unrelated court case in 2007 wherein Darin Bybee declared that he was the Regional Operations Director for DBOC, and that DBOC owns and operates restaurants throughout the United States, including California, where it employs hourly workers. (Dkt. 29-1 Ex. A.)[7] But the fact that DBOC, at a time prior to Plaintiff's employment at D&B Irvine, had employees does not render false Ms. Valachovic's statement that DBOC did not have employees during Plaintiff's employment or at the present time. Ultimately, the fact DBOC once had employees has no bearing on whether Plaintiff has plausibly alleged that DBOC was connected to the alleged decisions regarding his medical leave and termination.

---

[7] Plaintiff's request for judicial notice, (Dkt. 19), is GRANTED as to Exhibit A. Rule 201(b) of the Federal Rules of Evidence authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted); *see also Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) (court took judicial notice of proceedings and filings in other courts, including a decision of the California Supreme Court issued while the parties' appeal in the federal case was pending).

Plaintiff also requests an award of attorneys' fees and costs for filing this motion to remand. (Mot. at 12–13.) However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Because the Court finds that DBOC is a sham defendant, the Court finds Defendants had an objectively reasonable basis for removal. Thus, the Court DENIES Plaintiff's request for attorneys' fees and costs.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

DATED: March 14, 2018

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE